**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

          CASE NO. 05-80763
   Plaintiff,          HON. LAWRENCE P. ZATKOFF

v.

KEITH EARL EDGERSON,

   Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 12, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Keith Edgerson's Motion to Suppress Evidence. Plaintiff has responded. In addition, the Court conducted an evidentiary hearing in this matter on January 5, 2006. At the hearing, the Court accepted testimony and heard the parties' legal arguments. On January 10, 2006, Defendant filed a Supplemental Brief. For the reasons set forth below, Defendant's Motion to Suppress Evidence is DENIED.

**II. BACKGROUND**

On August 23, 2005, Defendant Keith Edgerson was charged by Indictment on four counts: (1) Felon in Possession of a Firearm, (2) Possession of a Stolen Firearm, (3), Possession with Intent

to Distribute Marijuana, and (4) Possession of Firearm in Furtherance of a Drug Trafficking Crime. The charges stem from Defendant's April 14, 2005 arrest by the Detroit Police Department's Fugitive Apprehension Service Team (FAST). That arrest is the subject of the present motion.

On April 14, 2005, FAST received a tip that Defendant was selling marijuana while armed with two handguns in the "horse shoe" section of the Smith Homes Housing Project.[1] The tip also indicated that Defendant was violent and would likely use the gun if encountered. Around 11 a.m., FAST officers arrived at the housing project and were directed by the housing project's maintenance man to 14348 Crescent (which was located in the "horse shoe" section of the project). Sgt. Donnelly knocked on the door of 14348 Crescent and a male voice responded. Sgt. Donnelly identified himself as the police. Although the officers saw movement inside the premises, no one came to the door or exited the premises. The officers surrounded the premises and waited outside. As the officers waited, they learned that a woman and her child lived inside the house.

After approximately 25 minutes, Defendant yelled to Officer Goode from an upstairs window that he was coming out. Defendant and two others then came out of the house and were searched and detained by police.[2] No guns were found on any of the individuals. Sgt. Donnelly then went inside the house to perform a "protective sweep" to determine if other persons were inside the house. As he entered, Sgt. Donnelly noticed four bullet holes in the front of the house and smelled a strong odor of marijuana. During the sweep, Sgt. Donnelly and Officer Womble observed in plain view marijuana, a loaded Glock magazine, and a gun holster.

---

[1] The facts presented in this section are taken from the testimony presented at the January 5, 2006 evidentiary hearing and from the briefs of the parties.

[2] Both the other men were released on the scene after determining that neither had a prior criminal history.

Following the sweep, the officers located the leaseholder of 14348 Crescent, Tourina Manley. Ms. Manley acknowledged that Defendant had been staying at her house. Ms. Manley then gave the officers written consent to search her home. Officer Goode described Manley's demeanor at the time she gave her consent as being "normal" and "not upset."

The officers conducted the search with the assistance of Defendant and located a loaded Glock handgun, 288.1 grams of marijuana, and zip lock baggies near the marijuana. Defendant later provided a written statement admitting to possessing the Glock handgun and admitting that he had told the officers where the gun could be found in the house. Further investigation revealed that the Glock had been lost by a Detroit Police Department officer during a February 5, 2004 foot chase.

## III. ANALYSIS

Defendant argues that the April 14, 2005 search and seizure was a violation of the warrant requirement and that the evidence obtained from the search should be suppressed. Defendant makes two legal arguments: (1) that the "protective sweep" was unlawful because Defendant was arrested *outside* the home and because there were no specific facts which would have given the officers reason to conduct a protective sweep, and (2) that pursuant to *U.S. v. Chambers*, 395 F.3d 563 (6th Cir. 2005), the officers' consensual search of the premises was invalid because Ms. Manley consented in a "highly coercive atmosphere." Defendant also argues that the Government did not satisfy its burden because its witnesses at the evidentiary hearing had little credibility.

### A. Whether the Court Should Accept the Government's Witnesses as Credible

At the evidentiary hearing, Defendant attacked the credibility of the Government's witnesses. Defendant asserted that Officer Goode had little recollection of the event and was merely relying

3

on his report and that Sgt. Donnelly's testimony regarding the protective sweep conflicted with Officer Womble's report. The Court disagrees with Defendant's assertions.

As to the credibility of the witnesses, the Court was guided by the appearance and conduct of the witnesses, by the manner in which they testified, and by the character of the testimony given. The Court had an opportunity to view the witnesses' reactions to questions, their hand and eye movement, and their facial expressions. Additionally, the Court considered the witnesses' intelligence, motive, state of mind, demeanor, and manner while testifying. The Court also considered each witnesses' ability to observe the facts to which he or she testified and whether the witness appeared to have an accurate recollection of the relevant circumstances.

The Court finds that Officer Goode and Sgt. Donnelly were credible witnesses and accepts the factual content of their testimony.

## B. Whether the "Protective Sweep" was Lawful

The Supreme Court has long recognized that the Fourth Amendment protects against law enforcement officials entering a home without a valid search warrant or exigent circumstances. *See Payton v. United States*, 445 U.S. 573 (1980). In *Maryland v. Buie*, 494 U.S. 325 (1990), the Supreme Court recognized an exception which allows officers to conduct a "protective sweep" of the premises to ensure the officers' safety. Such a sweep permits officers, "as a precautionary matter and without probable cause or reasonable suspicion, [to] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id*. at 334. The Court further explained the circumstances in which such a search is permissible: "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an

individual posing a danger to those on the arrest scene." *Id*.

Contrary to defense counsel's assertions at the evidentiary hearing, the Supreme Court has not restricted "protective sweeps" to in-home arrests. Furthermore, the Sixth Circuit has explicitly rejected any bright-line rules which would restrict "protective sweeps" to in-home arrests. *See United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996) ("We decline to adopt a bright-line rule that prohibits police officers from conducting a protective sweep of a home every time they arrest a defendant outside that home, regardless of the potential danger from other persons inside.")

Under the present facts and applicable law, the Court finds that the police officers' protective sweep was lawful. The officers had reason to believe that there were weapons in the house as well as other people in the house. Furthermore, approximately 25 minutes had elapsed since the officers first surrounded the house, thereby giving anyone inside ample time to prepare an ambush on the officers.

Under the circumstances, it was permissible for the officers to conduct a "protective sweep" of the house. Accordingly, Defendant's Motion to Suppress should be denied.

**C. Whether the Consensual Search was Lawful**

Voluntary consent constitutes a waiver of an individual's Fourth Amendment rights. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). After completing the protective sweep, the police obtained the written consent of Tourina Manley, the leaseholder of 14348 Crescent, prior to searching the premises. Defendant argues that the officers' search was illegal because Ms. Manley could not give valid consent due to the highly coercive atmosphere which resulted from the prior arrest of Defendant and the protective sweep of Ms. Manley's home.

For support, Defendant directs the Court to the recent Sixth Circuit case of *United States v.*

*Chambers*, 395 F.3d 563 (6th Cir. 2005).  In *Chambers*, police officers conducted a warrantless entry of a home and found evidence of methamphetamine use and manufacture.  The officers then advised the defendant and his wife of what the officers had found and whether the two would consent to a search of the home.  The couple agreed to the search.  On appeal, the Sixth Circuit concluded that the consensual search was invalid because the consent was not voluntary due to the "highly coercive atmosphere" created by the prior search.

The Court finds that the present facts are distinguishable from *Chambers* and that the search of Ms. Manley's home was valid.  In the present case, and in contrast to *Chambers*, the prior entry into Ms. Manley's house was valid.  Additionally, the facts suggest that the atmosphere was less coercive than in *Chambers* because Ms. Manley was not facing arrest and was not even present during the initial sweep of the home or for the arrest of Defendant.  Quite simply, there is no evidence that Ms. Manley's written consent was involuntary.[3]

For these reasons, the Court finds that the consensual search of 14348 Crescent was lawful and that Defendant's Motion to Suppress should be denied.

---

[3] On January 10, 2006, Defendant filed a supplemental brief asserting that defense counsel had been unable to locate Ms. Manley prior to the hearing, but that he had recently met with her and she is now available to testify.  Defendant alleges that Ms. Manley will testify, according to her recently signed affidavit, that she was acting under duress when she consented to the officers' search of her residence.  The Court remains unpersuaded by Defendant's proffered evidence, however, and continues in its belief that Ms. Manley's written consent was voluntary.

## V. CONCLUSION

For the above reasons, Defendants Motion to Suppress Evidence is HEREBY DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 12, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290