UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                           No. 05-80763

vs.                                    District Judge Lawrence P. Zatkoff

KEITH EDGERSON,                Magistrate Judge R. Steven Whalen

               Defendant.

_____ /

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Keith Edgerson's Motion to Vacate Sentence under

28 U.S.C. § 2255 [Docket #42], which has been referred for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below,

I recommend that the motion be DENIED.

## I.   PROCEDURAL HISTORY

Defendant filed a pretrial motion to suppress evidence seized as the result of a

consent search of his girlfriend's house.  The Court heard testimony on this motion on

January 5, 2006, and denied the motion by written opinion and order on January 12, 2006

[Docket #17].

On March 14, 2006, Defendant pled guilty to being a felon in possession of a

firearm, 18 U.S.C. § 922(g)(1) (Count I); possession of a stolen firearm, 18 U.S.C. §

922(j) (Count II); possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1)

and 851 (Count III); and possession of a firearm in furtherance of a drug trafficking

crime, 18 U.S.C. § 924(c) (Count IV).  Defendant entered a conditional plea under

Fed.R.Crim.P. 11(a)(2), whereby he did not waive his right to appeal the denial of the

motion to suppress evidence. (Tr. 3-14-06, 15-16).

On June 6, 2006, Defendant was sentenced to concurrent terms of 120 months on

Counts I, II and III, and a consecutive sentence of 174 months on Count IV, to be

followed by four years of supervised release.  All sentences were made concurrent to

Defendant's state court sentence (Tr. 6-6-06, 13-15).

Defendant then took an appeal to the United States Court of Appeals for the Sixth

Circuit, which affirmed the District Court's denial of the motion to suppress on July 16,

2007 [Docket #37].  The United States Supreme Court denied Defendant's petition for

writ of certiorari on December 20, 2007 [Docket #40].

Defendant filed the present motion under 28 U.S.C. § 2255 on December 8, 2008,

raising three issues: (1) his Fourth Amendment rights were violated where his girlfriend's

consent to search the house where the contraband was found was coerced and

involuntary; (2) his Fifth Amendment rights were violated where he was not given

Miranda warnings "until after the officers used coercion and improper tactics and forced

me to show them where the firearm and marijuana was at inside the house"; and (3) he

was deprived of his Sixth Amendment right to the effective assistance of counsel due to

errors of both trial and appellate counsel.

## II.    FACTUAL BACKGROUND

Defendant's pretrial motion to suppress evidence was based on the events surrounding his arrest on April 14, 2005, and the consent search of an apartment that was leased by his girlfriend, Torrina Manley.  At the evidentiary hearing on January 5, 2006, Detroit Police Sergeant Francis Donnelly, who at the time of Defendant's arrest was working with the Fugitive Apprehension Team, testified that on April 14, 2005, he participated in the Defendant's arrest pursuant to an outstanding warrant, after receiving a tip as to the Defendant's location (Tr. 1-5-06, 31-35).  The officers knocked on the door of an apartment, and after about 25 minutes, the Defendant came out, along with two other males.  *Id.* 34-37.  The Defendant was detained, and the officers conducted a warrantless protective sweep of the apartment, during which they observed, in plain view, a handgun, a holster and marijuana.  *Id.* 38-39.  Sgt. Donnelly then went outside, and shortly afterward Ms. Manley showed up.  *Id.* 40.  He testified that Ms. Manley gave consent to search her apartment:

> Q (By AUSA): And did you have a conversation with her?
>
> A: Yes.
>
> Q: What was her demeanor?
>
> A: Concerned.  Wanted to know what was going on.
>
> Q: Did you come to learn that she was actually the resident of that premises?
>
> A: Yes.
>
> Q: And did you tell her that you were arresting the defendant or could she see that?

-3-

A: She could see that.

Q: Did you at some point ask her for consent to search the premises?

A: Yes.

Q: Dif she agree to give her consent to you?

A: Yes. *Id.* 40-41.

Regarding Ms. Manley's demeanor when she was asked to sign a consent to search

form, Sgt. Donnelly testified:

Q: And can you explain for us the demeanor or the manner in which Ms.
Manley executed these documents giving her consent?

A: I asked her to sign the form, advised her she didn't have to sign it, didn't
have to consent. She voluntarily signed the form, both of them.

Q: At the time she signed the forms had she been told what you had seen
during your protective sweep of the premises?

A: No.

Q: Was she asked if there were drugs or guns in the house?

A: Yes.

Q: What did she say?

A: She admitted there were probably some personal use marijuana in the
home, but not any firearms.

Q: Would you describe her demeanor as cooperative?

A: Yes. *Id.* 43.

Sgt. Donnelly testified that Ms. Manley was not arrested. *Id.* 51.

Detroit Police Officer Curtis Good also participated in the Defendant's arrest on

April 14, 2005.  He testified that while the Defendant was detained outside the residence,

Ms. Manley approached him and admitted that she lived there. *Id.* 12-13.  He asked her to

sign a consent to search form, and she did so.  *Id.* 14-15.  Officer Good said that Ms.

Manley was cooperative, and that her demeanor was "normal to me.  She wasn't upset or

anything like that."  *Id.* 13.  He said that Ms. Manley had no reservations about signing

the consent forms, and asked no questions concerning the search.  *Id.* 17-18.

Ms. Manley did not testify at the suppression hearing.  However, after the hearing

but before this Court issued a decision, Defendant submitted a supplemental brief

containing Ms. Manley's affidavit.  *See* Docket #16.  In ¶ 7 of her affidavit, she stated as

follows concerning her consent to search:

> " An Officer spoke to me and said they had observed illegal activity in the
> home and if I didn't sign Consent to Search forms, they would get a warrant
> anyway, I would have to wait for the warrant and could not go onto my
> home until they got a warrant which could take all day and I could be
> evicted from the home because of what they had observed."

In denying the motion, this Court found that (1) an initial "protective sweep" of

Manley's apartment, conducted after the Defendant exited the apartment and surrendered

to the police, was valid; and (2) Ms. Manley's consent to search the apartment was

voluntary and lawfully obtained. *Opinion and Order*, Docket #17.  The Court noted that

the Defendant attacked the credibility of the government's witnesses, arguing that Officer

Good had an impaired recollection of the events, and that Sgt. Donnelly's testimony

conflicted with the reports of another officer.  Rejecting the Defendant's arguments on

credibility, this Court stated:

"As to the credibility of the witnesses, the Court was guided by the appearance and conduct of the witnesses, by the manner in which they testified, and by the character of the testimony given.  the Court had an opportunity to view the witnesses' reactions to questions, their hand and eye movement, and their facial expressions.  Additionally, the Court considered the witnesses' intelligence, motive, state of mind, demeanor, and manner while testifying.  The Court also considered each witnesses' ability to observe the facts to which he or she testified and whether the witnesses appeared to have an accurate recollection of the relevant circumstances.

"The Court finds that Officer Goode and Sgt. Donnelly were credible witnesses and accepts the factual content of their testimony." *Id.* 3-4.

In reviewing this issue on appeal, the Sixth Circuit summarized the facts as

follows:

"On April 14, 2005, Keith Edgerson voluntarily surrendered to Detroit police outside the apartment of his girlfriend, Torrina Manley, where he had been staying for at least two weeks.  Officers arrived at the apartment on a tip that Edgerson was armed and had been dealing marijuana.  They knocked at the door and, after a delay of 25 minutes, Edgerson exited the house with two other men.  The police determined that none was armed or carried any contraband, and arrested Edgerson pursuant to a warrant.

"The police then made a brief warrantless entry into the home under the auspices of a 'protective sweep.'  Approximately 25 minutes later, Ms. Manley arrived and identified herself as the sole leaseholder.  She signed a handwritten 'consent to search' at the scene, and minutes later signed another, this time on an official form.  At the time she gave consent, Ms. Manley did not know that the protective sweep had occurred, although she could see that Edgerson had been arrested." Docket # 37, pp. 1-2.

The Sixth Circuit "disagree[d] with the district court's conclusion that the initial

'protective sweep' was lawful," *Court of Appeals Opinion*, Docket #37, at 3, but affirmed

the denial of the motion to suppress based on Ms. Manley's voluntary consent to search:

"When the prosecution seeks to justify a warrantless search with proof of voluntary consent, it need not demonstrate that the defendant gave consent

-6-

if it can show that a co-tenant with '[her] own right' to permit the inspection consented to the search, and no present co-tenant objects. *United States v. Matlock*, 415 U.S. 164, 171-72 (1974). Like the defendant in *Matlock*, Edgerson was in custody, and was not present when Ms. Manley gave her consent. Edgerson argues that the taint of the initial illegal entry invalidates Ms. Manley's consent. *See United States v. Buchanan*, 904 F.2d 349, 355-56 (6th Cir. 1990). Although the protective sweep was unlawful, Ms. Manley was not aware that it had occurred when she gave her consent, and she was not facing arrest herself. Moreover, the district court expressly found that the drugs and the gun were 'discovered without reference to the police error or misconduct,' and 'there is no nexus sufficient to provide a taint.' *See Nix v. Williams*, 467 U.S. 431, 448 (1984). Edgerson has failed to demonstrate clear error." *Id*.

### III.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. "[A] defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 6th Cir. 1998) (internal quotation omitted); *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994). To prevail under § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir.2003). The standard of review of Section 2255 petitions is quite stringent, and the Court presumes that the proceedings which led to defendant's conviction were correct. *See Klein v. United States,* 880 F.2d 250, 253 (10th Cir.1989).

Where the defendant has failed to assert his claims on direct appeal and thus has

procedurally defaulted, in order to raise them in a § 2255 motion he also must show either

that (1) he had good cause for his failure to raise such arguments and he would suffer

prejudice if unable to proceed, or (2) he is actually innocent. *Bousley v. United States,*

523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  "Section 2255 is not a

substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct

appeal process." *Regalado v. United States,* 334 F.3d 520, 527 -528 (6th Cir. 2003), *citing*

*United States v. Frady,* 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

## IV.    ANALYSIS

### A.    Fourth Amendment

Defendant again challenges the legality of Ms. Manley's consent to search her

apartment, arguing that Sgt. Donnelly "forced Torrina Manley to sign a consent to search

form."  However, both this Court and the Sixth Circuit have already disposed of that

issue, holding that Ms. Manley gave voluntary consent to search.  The law is clear that in

a § 2255 motion, a Defendant may not relitigate issues that were decided on appeal. "The

decision on the direct appeal is the law of the case, absent the intervention of 'new law'

since the trial and appeal."  *Turner v. United States*, 948 F.2d 1290 (Table) (6th Cir.1991);

*United States v. Davis,* 472 F.2d 596 (9th Cir.1972), rev'd on other grounds, 417 U.S. 333

(1974) ("[W]here an issue has been decided on direct appeal from a conviction, it cannot

be relitigated again on a § 2255 motion. The decision on the direct appeal is the law of the

case.").

Ms. Manley's more recently submitted affidavit, appended to this motion as

Exhibit B and dated November 21, 2008, does nothing to change the equation. Ms.

Manley states that two officers sat her in a lawn chair in her front yard and threatened that

they would "have [her] family split up [and] [her] son taken away." She also claims that

the officers told her that they would get a search warrant if she did not consent, and that

they would see that she was evicted. However, Ms. Manley's previous January 10, 2006

affidavit, which was submitted to this Court before it denied the motion to suppress,

contains similar claims. To the extent the more current affidavit embellishes those claims,

that information could have been presented earlier.[1] In addition, this Court specifically

found that the officers' version of events was credible, and accepted their testimony as

fact. "For purposes of a § 2255 motion, the Court's findings of fact are presumed to be

correct, absent clear and convincing evidence to the contrary." *Jackson v. United States*,

2008 WL 2357700, *2 (E.D.Mich. 2008)(Duggan, J.).[2]

      Under the law of the case doctrine, Defendant's Fourth Amendment claim should

---

[1] The current affidavit also suggests that Ms. Manley was aware that the officers had conducted a protective sweep of her residence, because she saw them carrying a gun and marijuana out of the home. The Sixth Circuit based its ruling only *in part* on the fact that "Ms. Manley was not aware that it had occurred when she gave her consent." Docket #37, p. 3. However, Ms. Manley's January 10, 2006 affidavit [Docket #16] also indicated that she new the police had entered her house, although, contrary to the current version, she said that the officers told her they had observed illegal activity in the home, not that she actually saw them removing contraband. That previous affidavit was part of the record that was before this Court and the Sixth Circuit.

[2] Because *Jackson* is an unpublished decision to which Defendant, a prison inmate, likely does not have access, as is *Turner v. United States, supra*, copies will be mailed to him along with this Report and Recommendation.

be rejected.

## B.    Fifth Amendment

Defendant claims for the first time in these proceedings that post-arrest statements

were taken from him in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966).  This issue was never raised prior to Defendant's guilty plea.

In general, a plea of guilty waives all non-jurisdictional defects.  *United States v.*

*Ormsby,* 252 F.3d 844, 848 (6th Cir.2001).  This would include a *Miranda* issue.  Under

Fed.R.Crim.P. 11(a)(2), a defendant may enter a conditional plea whereby he preserves

the right to appeal *specified* pretrial motions:

> "(2) **Conditional Plea.**  With the consent of the court and the government, a
> defendant may enter a conditional plea of guilty or nolo contenderre,
> reserving in writing the right to have an appellate court review an adverse
> determination of *a specified pretrial motion*."  (Emphasis added).

> When he pled guilty, the Defendant reserved his appellate rights as follows:

> "MR. EPSTEIN (Defendant's counsel): Judge, before the defendant speaks,
> I should indicate to the Court one agreement that the parties have reached
> with respect to this plea. And that is, this is a plea of guilty pursuant to Rule
> Eleven (a)(2) which [is] called a conditional plea of guilty.  He has not
> waived his appellate rights as the defendants normally do.

> THE COURT: It's Rule Eleven what?

> MR. EPSTEIN: (a)(2).

> THE COURT: Did we hold evidentiary hearings on this matter?

> MR. EPSTEIN: Yes.

> THE COURT: That's what you are talking about.  He is not waiving his
> right to appeal those rulings on the Evidentiary Hearings.

MR. EPSTEIN: Well, the defendant does not wish to waive any appeal
rights at this time.  (Tr. 3-14-04, 15-16).

Although Defendant appeared to be attempting to preserve any and all issues

notwithstanding his plea of guilty, Rule 32(a)(2) clearly states that a conditional plea of

guilty must specify what matters are reserved for appeal.  As the Sixth Circuit held in

*United States v. Woosley*, 361 F.3d 924, 928 (6th Cir. 2004):

> "Federal Rule of Criminal Procedure 11(a)(2) provides that a criminal
> defendant, with the consent of the Government and the court, may enter a
> conditional plea, reserving in writing the right to appeal adverse decisions
> *of specified pretrial motions*. Woosley's motion for a *Franks* hearing was
> not part of his motion to suppress, and it was not disposed of in the district
> court's September 10, 2002, order. Accordingly, Woosley may not appeal
> the district court's adverse ruling on his motion for a *Franks* hearing, as *he
> did not reserve his right to appeal that issue*." (Emphasis added).

*See also United States v. Dossie*, 188 Fed.Appx. 339, 344-345, 2006 WL 2034234, *4 (6th

Cir. 2006) ("Dossie's conditional plea agreement waived his right to appeal all issues

except for specifically delineated issues").[3]

Defendant's *Miranda* issue is therefore deemed waived.

### C.   Ineffective Assistance

### 1.   Trial Counsel

Defendant claims that his trial attorney was constitutionally ineffective "by not

subjecting the government's cases to rigorous adversarial testing"; that counsel failed to

call witnesses at a critical stage in the proceedings, i.e., Officer Wombley; and failed to

---

[3] The Defendant will be provided with a copy of the *Dossie* decision.  *See* fn. 2,
*supra*.

file a timely motion to suppress evidence under the Fifth Amendment.

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where ineffective assistance is alleged in the context of a guilty plea, it must be shown that counsel's performance was deficient and that the deficient performance caused the defendant to reach a different decision regarding the plea. *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To satisfy the "prejudice" prong of *Strickland*, the defendant must show that but for counsel's errors, he or she would not have pled guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58-59; *Warner* v. *United States*, 975 F.2d 1207, 1214 (6th Cir. 1992)(prejudice shown if

defendant shows a reasonable probability that but for counsel's defective advice, he would not have pled guilty).

While failure to file a motion to suppress may in some circumstances constitute ineffective assistance, it is not ineffective assistance *per se*. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). If such motion would not be successful, "counsel may not be criticized for having accurately assessed his client's chances" of success. *Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984) (Contie, J., concurring). In addition, if a defendant cannot show that a motion to suppress would have been granted, then he has not satisfied the "prejudice" prong of *Strickland*.

In his post-appeal affidavit, appended to this motion as Exhibit A, Defendant alleges that he was browbeaten by the Detroit Police Officers, and coerced into showing them the location of the gun and the marijuana before he was given Miranda warnings. However, his written statement was not given to the Detroit officers on the scene, but as Sgt. Donnelly testified at the suppression hearing, was given to ATF Agents after the Defendant was turned over to them:

> Q: And did you have an opportunity to interview the defendant after the search was completed?
>
> A: I spoke with him.
>
> Q: Did he provide a statement?
>
> A: Not to me. Not under Miranda, no.
>
> Q: At that point, was your involvement in the execution or the search of this premises completed?

-13-

A: Yes.

Q: So any further involvement, as far as the statement from the defendant, would have been done by the ATF?

A: Yes.  (Tr. 1-5-06, 45).

It is this written statement that is in issue.  In *Oregon v. Elstad*, 470 U.S. 298, 309,

105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court held:

> "It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, *the admissibility of any subsequent statement should turn ... solely on whether it is knowingly and voluntarily made.*"  (Emphasis added).

In *Fleming v. Metrish*, 556 F.3d 520, 557 (6th Cir. 2009), the Sixth Circuit

explained some of the factors to be considered in determining the admissibility of a

second, voluntary statement that follows an unlawfully obtained statement:

> "In deciding whether a second confession has been tainted by a prior coerced statement, the Supreme Court has instructed courts to 'examine the surrounding circumstances and the entire course of police conduct with respect to the suspect.' *Elstad,* 470 U.S. at 318, 105 S.Ct. 1285. In particular, courts must consider 'the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators.' *Id.* at 310, 105 S.Ct. 1285. Whether effective *Miranda* warnings preceded the subsequent statements also is relevant. *Westover v. United States,* decided together with *Miranda,* 384 U.S. at 496-97, 86 S.Ct. 1602."

The Defendant does not claim that the ATF Agents did not give him Miranda

warnings before taking his written statement.  Although he claims that his initial

statements to the Detroit officers were coerced, Defendant's post-appeal affidavit differs from Officer Donnelly's testimony at the suppression hearing. Again, however, the District Court specifically found that Donnelly was a credible witness. Thus, while his statements to the police may have violated *Miranda*, Defendant has not shown that they were involuntary.

Thus, when the Defendant made his written statement, he had been Mirandized, and he was questioned at a later point in time, by different agents, at a different place. Under the totality of these circumstances, even assuming that Defendant's statements to the Detroit officers regarding the location of the contraband were obtained in non-compliance with *Miranda*, any taint from those statements was removed before he provided the second, written statement to the ATF Agents.  Apart from the fact that the *Miranda* issue was waived by Defendant's plea, he cannot show that a motion to suppress his statement would have been successful.

Defendant also faults trial counsel for not presenting the testimony of Officer Womble, whose police report was in conflict with Sgt. Donnelly's testimony.  However, counsel aggressively cross-examined Donnelly regarding the inconsistency and argued that both Donnelly and Officer Good lacked credibility.  The Court rejected those arguments.

Defendant has not shown that his trial attorney's representation was in any way objectively unreasonable, or that he has been prejudiced by his attorney's actions. Nor has he shown that but for counsel's alleged errors, he would have elected not to plead guilty.

*Hill v. Lockhart, supra*. Indeed, there was arguably sufficient evidence to convict the

Defendant even without his statement.  His attorney properly placed the focus of his

pretrial efforts on the exclusion of the physical evidence–the gun and the drugs–which

was clearly dispositive, and preserved that issue for appeal.

### 2.    Appellate Counsel

An issue of ineffective assistance of appellate counsel is analyzed under the two-

prong test of *Strickland.*  As in any counsel ineffectiveness claim, sound strategic choices

as to which issues to pursue on appeal are given a generous degree of deference, *United*

*States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990), and "there can be no constitutional

deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171

F.3d 408, 413 (6th Cir. 1999).  Nevertheless, appellate counsel can be "constitutionally

deficient in omitting a dead-bang winner even while zealously pressing other

strong...claims." *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989).  A "dead-bang

winner" has been defined as "an issue which was obvious from the trial record." *United*

*States v.  Cook*, 45 F.3d 388, 395 (10th Cir. 1995).

As discussed above, the Defendant entered a conditional plea of guilty pursuant to

Fed.R.Crim.P. 32(a)(2), specifically preserving only one issue–the denial of his motion to

suppress evidence–for appellate review.  His appellate counsel raised and argued that

issue, and in fact convinced the Sixth Circuit to overturn the District Court's finding that

the protective sweep was lawful, although that was a somewhat pyrrhic victory given the

Court's ultimate decision.  In any event, there were no other issues, "dead-bang winners"

or otherwise, that were supported by the record. Defendant was not denied the effective
assistance of appellate counsel.

## V.   CONCLUSION

For these reasons, I recommend that Defendant's Motion to Vacate Sentence under
28 U.S.C. § 2255 [Docket #42] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10)
days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich.
LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard
v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947
(6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with
specificity will not preserve all the objections a party might have to this Report and
Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *and
Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).
Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this
Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the
opposing party may file a response.  The response shall be not more than twenty (20)
pages in length unless by motion and order such page limit is extended by the court.  The
response shall address specifically, and in the same order raised, each issue contained
within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 27, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 27, 2009.

s/Susan Jefferson
Case Manager